### HARDIN v. TRIMMIER.

1. Defendant lent plaintiff $900, charging therefor a usurious rate of interest, and afterwards the usury law was so amended that any person who received as interest more than the amount allowed by law was liable to forfeit double the sum so received, to be recovered by a separate action. After the enactment of this law, plaintiff paid the debt in full, according to the letter of his contract, and then brought action

against defendant to recover double the amount so paid in excess of the sum borrowed. *Held*, that he was entitled to recover. *Statutes stated and cases reviewed.*

2. The penalty for *charging* usurious interest is, under the act of 1877 (16 *Stat.*, 325), a loss of the right to recover interest or costs; and the penalty for *receiving* usurious interest is, under the act of 1882 (18 *Stat.*, 35), a liability to pay double the amount so received. These penalties are different and distinct.

3. In applying the penalty for receiving, after the act of 1882 prescribing such penalty, usurious interest on a usurious contract entered into prior to that act, the act is not made to impair the obligation of the contract, nor given a retroactive effect.

4. Under a statute forbidding the recovery on a usurious contract of any more than the principal debt, only the repayment of the principal debt is the legal contract of the parties. As to the interest charged or reserved, the contract is void.

5. Voluntary payment of usurious interest does not estop the debtor from suing to recover the penalty prescribed in the act of 1882; for it is only by payment that he acquires a right of action under this statute.

6. An amendment to a statute has effect from the time it becomes a law, leaving the prior law still of force as to contracts entered into before the amendment was adopted.

7. Imposing upon a creditor a liability to pay to the debtor double the amount of usurious interest received by the creditor, to be recovered by the debtor in a separate action, or allowed to him as a counter-claim, does not affect the liability of the debtor to pay the amount of his lawful contract—the sum actually lent—and therefore does not impair the obligation of the only contract between the parties recognized by the law.

Before HUDSON, J., Spartanburg, October, 1886.

The opinion fully states the case.

*Mr. J. S. R. Thomson*, for appellant.

*Messrs. Carlisle & Hydrick*, contra.

July 8, 1887.   The opinion of the court was delivered by

MR. JUSTICE MCIVER. On December 18, 1882, Trimmier, the respondent, loaned to Hardin, the appellant, the sum of nine hundred dollars, at the same time taking his note for one thousand and seventeen dollars, payable one year after date, with interest from

date at the rate of seven per cent. per annum. On February 27, 1884, the appellant paid to the respondent the sum of eleven hundred and two 77-100 dollars, being the whole amount due, according to the terms of the note, and being two hundred and two 77-100 dollars in excess of the amount actually loaned by the respondent to the appellant. This action was brought by appellant to recover from respondent the sum of four hundred and five 54-100 dollars, being double the sum received by respondent, in excess of the sum actually loaned by him to appellant, under the provisions of the second section of the act of December 21, 1882. (18 *Stat.*, 35.) These facts having been put in evidence by the plaintiff, who then closed his case, a motion for a non-suit was made by defendant, upon the ground that the penalty or forfeiture imposed by the act of 1882, could not be applied to a payment made on a contract entered into before the passage of the act; and the motion was granted by the Circuit Judge upon that ground.

The plaintiff appealed upon the following grounds, that his honor erred : "I. In ruling that the act in force when the note was given did not give the forfeiture and penalty sued upon in the complaint for a payment in February, 1884, and that any subsequent act could not give a forfeiture for a payment made upon said note. II. In granting a non-suit."

For a proper understanding of the question raised by this appeal, a brief review of the various usury laws of the State may not be unimportant. By the original act of 1777, the taking of more than seven per cent. interest on money loaned was prohibited, and the act declared that any contract for the payment of a greater rate should be absolutely void, and the lender was liable to forfeit treble the value of the money lent, one-half of which should be paid to the commissioners of the treasury and the other half to the informer. By the act of 1830 the provision of the act of 1777 declaring the whole contract by which money loaned at a greater rate of interest than seven per cent. to be absolutely void, as well as the forfeiture of treble the value, was repealed, and the lender was allowed to recover the sum actually loaned without interest or costs, so that, practically, the only penalty was the loss of all interest and costs. By the

act of 1866 all acts and parts of acts limiting the rate of interest which might be agreed upon by the parties, were repealed; so that parties might lawfully contract for any rate they pleased, but in the absence of any agreement in writing as to the rate of interest, the legal rate of interest should remain at seven per cent. ; and the same rate should be allowed on all judgments and decrees of any court.

By the act of 1877, now incorporated as section 1288 in the General Statutes, which was the law in force at the time the contract in this case was entered into, it was declared that: "No greater rate of interest than seven (7) per centum per annum shall be charged, taken, agreed upon, or allowed upon a contract arising in this State for the hiring, lending, or use of money or other commodity. No person or corporation lending or advancing money or other commodity upon a greater rate of interest shall be allowed to recover in any court of this State any portion of the interest so unlawfully charged ; and the principal sum, amount, or value so lent or advanced, without any interest, shall be deemed and taken by the courts of this State to be the true legal debt or measure of damages to all intents and purposes whatsoever, to be recovered without costs." This provision, therefore, restored the law to what it was under the act of 1830, to which it is very similar. On December 21, 1882 (18 *Stat.*, 35), three days after the contract in this case was entered into, section 1288 of the General Statutes was amended by inserting a provision therein whereby parties were permitted to contract for a rate of interest not exceeding ten per cent., by an express agreement in writing to that effect. This act of 1882, in its second section, contains a new and additional provision in these words: "That any person or corporation who shall receive as interest any greater amount than is herein provided for shall, in addition to the forfeiture herein provided, forfeit also double the sum so received, to be collected by a separate action, or allowed as a counter-claim to any action brought to recover the principal sum."

It will thus be seen that under the law as it stood at the time the money was loaned to the plaintiff by the defendant, the only risk which he ran, and the only penalty to which he subjected him-

self *in charging* more than the lawful rate of interest, was the liability to lose all interest and costs in case he had to sue for the recovery of the money lent; and, upon well settled principles, it is quite clear that no subsequent legislation could impose upon him any additional penalty for *doing that act.* But it does not follow, by any means, that the legislature may not, by subsequent legislation amendatory of the former, impose a new or additional penalty for doing some *other act*, which, if done after the adoption of such amendatory legislation, would render him liable to such new or additional penalty. *Charging* usurious interest and *receiving* such interest are two entirely distinct and different things, and may be done, as they were in fact done in this case at two distinct and different times—the one *before*, the other *after*, the passage of the act of 1882. They may also, as in fact they are, by the law as now written, be prohibited under different penalties—the one less than the other ; for under the existing law one who simply charges, but does not receive, usurious interest, is liable only to lose the right to recover any interest or costs in case he has to sue for the money loaned, whereas one who receives usurious interest not only incurs that risk, but becomes also liable to pay double the amount so received.

It is important that this distinction should be kept in mind. As is said in 3 *Pars. Cont.*, 123: "The law affects a usurious contract with two consequences, which should be discriminated. One is the avoidance of the contract, the other is the penalty for the breach of the law. Now, the penalty is not incurred until usurious interest be in some way paid or received, although the contract may be avoided for this cause at any time. * * * Although an original contract for the use of money be free from the taint of usury, and consequently can be enforced, yet if usurious interest be actually paid upon it afterwards, the penalty is incurred." In a note the author cites the case of *Pearson* v. *McGowran* (3 *Barn. & C.*, 700; 5 *Dowl. & R.*, 616), where the venue in action of debt for penalties was laid in Middlesex, and the offence was alleged to be that usurious interest was secured to the defendant by a bill of exchange accepted and afterwards paid by a person named Bottrill. On the trial it appeared that the contract was made and the acceptance given in

Middlesex, but that the bill was paid in London to the holders, to whom the defendant had indorsed it.   Abbott, C. J., delivering the opinion of the court, referred to the statute providing that any person taking, accepting, or receiving above £5 per cent. interest, should forfeit the treble value of the moneys lent, and providing that the forfeiture should be sued for in the county where the offence was committed, and said: "Then the only question is, what is the offence?   We think it consists in taking, accepting, and receiving usurious interest.   The corrupt contract precedes and forms no part of the taking, therefore the offence here was not committed partly in Middlesex and partly in London, and the only materiality of the contract is to show the real nature and conseqent illegality of the taking.   *   *   *   We are of opinion that the venue in this case ought to have been laid in London, and not in Middlesex."   That case clearly recognizes the distinction between the making of a contract, wherein usurious interest is charged, and the taking or accepting such interest afterwards, and that the one forms no part of the other, and the only need of referring to the original contract at all is for the purpose of ascertaining whether, at the time such contract was made, the interest charged was usurious.   If it was, and such interest is afterwards received, it is *then* that the offence for which the penalty is imposed is committed, and must be dealt with under the law as it *then* exists.

Applying these principles to the case now under consideration, in which it is, and must necessarily be, conceded that at the time the contract was originally made the interest charged therein was usurious, it is clear that it was error to hold that the defendant could not be subjected to the penalty imposed by the second section of the act of 1882, for receiving, *after the passage of such act*, usurious interest, either upon the ground that such act impaired the obligation of the original contract, or that such act would otherwise be given a retroactive effect.

What was the original contract?   Under the law, as it then stood, it was simply a contract for the repayment of the sum of nine hundred dollars, the sum actually lent.   All beyond that was illegal and void.   Although the note by which the contract was evidenced purported to contain an obligation to pay more

than that sum, yet there was no legal obligation to do so—no legal or valid contract to pay anything more.   For although the act of 1830 did repeal that provision of the act of 1777, whereby "all bonds, specialties, contracts, promises, and assurances whatsoever," whereby a greater rate of interest than seven per cent. was reserved, were declared to be "utterly void and of no effect," yet the same act, as well as the act of 1877 (*Gen. Stat.*, 1288), also contained a provision forbidding the recovery of anything more than the sum actually lent, without interest or costs, the effect of which necessarily was, to make the contract void for everything which it purported to secure beyond the amount actually lent ; for when the lender was denied the right to recover any interest at all, the contract was to that extent deprived of all legal obligation, which is one of the necessary incidents to every legal and valid contract, and without which it cannot exist.

This view is supported by the case of *Gaillard* v. *LeSeigneur* (1 *McMull.*, 225), where it is held that a note given entirely for usurious interest was absolutely void, not only under the act of 1777, but also under the act of 1830 ; for, as was said by Johnson, J., in *Magwood* v. *Duggan* (1 *Hill*, 182) : "It is an universal rule that contracts which have for their object anything which is repugnant to justice or against the general policy of the common law, or contrary to the provisions of a statute, are void." It is true that Moses, C. J., in *Ex parte Montieth* (1 *S. C.*, 231), in speaking of a bond in which an illegal rate of interest was contracted for, does say : "The bond under the act of 1830 (6 *Stat.*, 409) was not void ;" but the language used by him in the very next sentence shows that what he really meant was that the entire bond was not void, but only so much of it as secured the payment of the interest.

The true view of the matter is, that while under the act of 1777, forbidding a charge of more than seven per cent. interest, a note or other contract purporting to secure a greater rate of interest, was declared to be absolutely void, not only for the interest, but also for the principal sum, so that a party who violated the statute lost his entire debt, principal as well as interest, under the act of 1830, as well as under the act of 1777, the penalty is not so great, and only extends to a loss of all the

interest. But as the law still forbids the taking or charging more than the lawful interest, where a note or other contract purports to secure the payment of usurious interest, such contract, while not void *in toto*, but is valid to the extent of the sum actually lent, yet is void so far as the interest is concerned, because, as said by Johnson, J., *supra*, it is "contrary to the provisions of a statute.".

We do not think, therefore, that the application of the second section of the act of 1882 impairs the obligation of any contract. The constitutional provision invoked must necessarily be regarded as designed for the protection of legal and valid contracts only, and not for the protection of those declared by statute to be illegal. Now, as we have seen, the only legal and valid contract in this case was a contract for the repayment of the sum of nine hundred dollars—the sum actually lent—and that contract is in no wise infringed upon, or in any way impaired, by the application which it is proposed to make of the act of 1882. The defendant, who lent the money, still had the unimpeachable right to recover and receive from the plaintiff, the borrower, the full sum of nine hundred dollars, notwithstanding the passage of the act of 1882. He not only had this right unimpaired, but as matter of fact in this case, he has fully, and without question, exercised it, for the entire sum loaned has been paid back to him. It is impossible for us to conceive how the obligation of the contract either has been, or could have been, in any way impaired by applying the act of 1882, as it is proposed to do in this case.

Nor do we see how it can be regarded as giving the act of 1882 any retroactive effect. The plaintiff's claim simply is that *since the enactment of the second section of the act of 1882* the defendant has done an act forbidden by the provisions of that section, under a penalty therein prescribed, and he seeks to recover such penalty. How this can be said to give the statute a retroactive effect, we are at a loss to conceive. There is no attempt to make the defendant liable for an act done *prior* to the adoption of the statute imposing the penalty sued for, but the proposition is simply to apply the statute to a transaction occurring subsequent to its adoption. The act complained of here is, *not* the making of a contract in which usurious interest was *charged,*

which did not occur prior to the passage of the act of 1882, and which is not subject to the penalty sued for here; but it is the *receiving* of usurious interest, which occurred after the passage of the act of 1882, and which is subject to the penalty sued for. The two acts, as we have seen, are entirely distinct and different. To apply the language used by Abbott, C. J., in the case hereinbefore cited, we think the offence consisted in receiving the usurious interest. The corrupt contract preceded and formed no part of the taking or receiving the interest; the offence, therefore, was not committed partly by making the original contract and partly by receiving the unlawful interest, and the only materiality of the original contract is to show the real nature and consequent illegality of the taking or receiving. Indeed, as is said by Parsons in the text, *supra*, even if the original contract had been free from the taint of usury, yet if usurious interest had been received afterwards, the penalty would be incurred.

Now, if in this case the usurious interest had been received by the defendant *before* the passage of the act of 1882, then there would be much force in the objection that to apply the act in such a case would be giving it a retroactive effect. So, too, if when the contract was originally made the act of 1866 had been in force, whereby persons were permitted to contract in writing for the payment of any rate of interest they might agree upon, and subsequent to the making of the contract another statute had been passed limiting the rate of interest to seven per cent., and forbidding the receipt of more under a penalty, and the defendant had, subsequent to such last mentioned statute, received the interest contracted for, we can very well understand how it would impair the obligation of the contract to apply the subsequent statute. For in the case supposed the defendant would have a valid, legal, vested right, not only to contract for, but to receive the rate of interest agreed upon and specified in the note, and no subsequent statute could have the effect of abridging, or in any way impairing, such right. But the case actually before us for determination is very different from the case supposed. Here, when the original contract was made, the defendant violated the law in inserting in the contract a promise to pay a greater rate of interest than that allowed by law, whereby the contract was

not only rendered void as to the payment of any interest, but the defendant also subjected himself to a liability to forfeit his right to recover either interest or costs in case he had to sue for the recovery of his money; and when by his subsequent act he received the usurious interest, he violated another statute which had been enacted more than a year previously, and he must pay the penalty imposed by such statute for a violation of its provisions.

It only remains for us to consider the several cases relied upon by counsel for respondent for the purpose of showing that they do not apply. We do not, however, deem it necessary to go over the authorities cited from the Supreme Court of the United States and elsewhere in reference to the provision of the constitution forbidding the enactment of any law impairing the obligations of contracts, or in reference to retroactive legislation, because, as we have shown under our view the application of the second section of the act of 1882 does not impair the obligation of any contract, nor is it given any retroactive effect. We propose, therefore, to confine our attention to the cases in our own State relating to the matter of usury, the subject more immediately under consideration.

In the case of *Magwood* v. *Duggan* (1 *Hill*, 182) the action was on a note executed prior to the passage of the act of 1830, and fell, therefore, under the provisions of the act of 1777. The plaintiff claimed that, under the provisions of the act of 1830, he was entitled to recover the principal sum loaned without interest; but the court held that the contract must be governed by the law in force at the time it was entered into (the act of 1777), under which the plaintiff was entitled to recover neither principal nor interest. This was upon the principle that the so-called contract, when entered into, being illegal—"contrary to the provisions of a statute"—was absolutely void under the provisions of the act of 1777, and never was a valid contract. Hence no subsequent legislation could make it so, for that would be substituting the will of the legislature for the agreement of the parties. If the parties had not succeeded in making a valid contract, the act of 1830 could not make one for them. How this case helps the defendant, we are unable to understand. In-

deed, the principle upon which that case rests lies at the very foundation of the view which we have adopted, to wit, that a contract, so far as it is in violation of the provisions of a statute, is an absolute nullity, and is of no binding force on the parties.

In *Gilliland* v. *Phillips* (1 *S. C.*, 152) the action was on a bond executed in 1860, purporting to secure the payment of usurious interest. The action having been commenced after the passage of the act of 1866, and the case having been heard prior to the re-enactment of the usury law in 1877, it was contended that the plaintiff was entitled to recover the full amount of the bond, interest as well as principal, inasmuch as the repeal of the. usury laws by the act of 1866 relieved him from the forfeiture provided for in the act of 1830. But the court held that the contract must be construed according to the law in force at the time it was made. That law was the act of 1830, and under its provisions the borrower was only legally liable for the principal sum without interest. This was a part of the contract, and its terms cannot be changed by subsequent legislation. The act of 1866 could not, therefore, have the effect of extending the liability of the borrower beyond the terms of the contract as originally made, and consequently the plaintiff was only entitled to recover the principal sum lent, as that in the eye of the law was all that the defendants ever contracted to pay. This case, so far from being in conflict with, rather appears to support the view which we have adopted. For it being unlawful, at the time the note sued upon in this case was given, to charge more than seven per cent. interest, the note, in which more is charged, can only be regarded as a contract to repay the sum actually lent—nine hundred dollars—and with that contract we do not propose to interfere.

In the case of *Ex parte Monteith* (1 *S. C.*, 227), the petitioner had suffered a decree for foreclosure of a mortgage to go against her by default; but subsequently becoming satisfied that usurious interest was provided for in the bond which the mortgage was given to secure, she filed a petition for leave to file a bill of review, with a view to enable her to set up the defence of usury. The court held that the facts stated in the petition were not sufficient to warrant the granting permission to file a bill of review;

and that is all that the case really decides. But even if we should consider what is said in the opinion of the court as to the operation and effect of the usury law, we find nothing in conflict with the view which we have adopted, except the single remark of Moses, C. J., that the bond under the act of 1830 was not void, which has hereinbefore been explained. It is very manifest that the case was decided mainly on the ground that the petitioner having neglected to avail herself of the defence of usury at the original hearing of the case, could not be permitted to file a bill of review simply to enable her to set up such defence. The case, however, seems to be relied on mainly as the basis of an argument, that if the court would not relieve a party who had failed to set up the defence of usury when sued, it would still less be disposed to lend its aid to a party who had actually performed his whole contract, not only by repaying the money borrowed, but also the usurious interest thereon. This argument ignores the express terms of the statute upon which this action is based. According to those terms the penalty is not incurred, and hence the right of action therefor cannot arise, until the usurious interest is paid—received by the lender ; and it would be very singular, to say the least of it, if a party could estop himself from the right of action for the recovery of the penalty by doing the very thing which alone gives rise to the right of action.

The remaining case relied on by defendant's counsel is the case of *Bowden & Earle* v. *Winsmith* (11 *S. C.*, 409), in which the action was on two notes, dated March 14, 1877, bearing interest at the rate of two per cent. per month after maturity ; and the question was whether the plaintiff could recover the interest as specified in the notes, or whether the defendant was not entitled to the benefits of the subsequent act of December 20, 1877, restricting the recovery to the principal sum without interest or costs. The court very properly held that the plaintiff was entitled to recover the full amount, both principal and interest, as specified in the notes, saying : "That was the contract of the parties, and at the time it was made there was no law to invalidate it." This is all that the case decides, so far as this matter is concerned, and is but a reaffirmation of the same principle recognized in several of the previous cases cited, and acted upon by us

in this case.    The case, however, seems to be cited for the bene-
fit of the language used by the former Chief Justice,  in the next
paragraph as  follows :  "The subsequent act  of  1877  (16  *Stat.*,
325) fixes  the  rate  of  interest  (§ 1)  at  seven  per cent.  on con-
tracts from and after its passage.    Section 2 of that act,  present-
ing certain consequences  to arise from establishing  a greater rate
of interest than that  fixed  by  the  first section,  must be read  as
restricted to cases falling under the first section."

It  is  argued  that  this language can be used  with equal force
in  reference  to  the  second section  of  the act of 1882,  and the
consequences arising under the second  section should be restrict-
ed to cases falling under the  first section.    But aside from the
fact that the language above quoted from the opinion of Willard,
C. J.,  is  nothing more than a  *dictum,*  which,  however,  when
properly understood,  we are  not  inclined  to  dispute,  it  is  very
obvious that it cannot serve to support the view contended for by
respondent's counsel.    In the case of  *Bowden & Earle* v.  *Win-
smith,*  the question  was  whether  a  contract  made  prior  to  the
passage of the act of 1877,  could be  brought under the operation
of that act.    In that case the rate of interest specified in the notes
sued upon was  not  unlawful  or  usurious  at  the  time the notes
were  given,  and  when,  in  the  first section  of  the act of 1877,
such a rate was prohibited and  the  rate  limited to 7 per cent.;
and  in the second section it was declared  that no  person lending
money at a greater rate of interest "than  is  provided for in sec-
tion 1 of this act"  should  be  allowed  to  recover  anything more
than the principal sum lent, without interest or costs,  it was very
properly  held  that  such  prohibition must be confined "to  cases
falling under the first section,"  as otherwise the act would be given
a retroactive effect upon a contract, which could not be done under
the provisions of the constitution.    The language relied upon can
only  be  properly  construed  as expressing  the  idea (though per-
haps the most appropriate terms for that purpose were not used)
that the legislature could not by  any  subsequent legislation add
to or vary the terms of a contract previously entered into.    Hence
when by the first section of the act a greater rate of interest than
seven per cent. was prohibited, and the consequences arising from
an effort to exact more were declared  in  the second section,  it

was quite natural to confine such consequences to cases arising under the first section, for that was the same thing as saying, what the constitution requires, that this change in the law as to the rate of interest could only apply to contracts entered into after such change was made.

Here, however, the first section of the act of 1882 makes no rate of interest usurious which was not so before, but left the law in that respect the same as it was when the contract now under consideration was made, the only change being a privilege to charge a greater rate than that previously allowed. Hence when, in the second section, a penalty was imposed for receiving a greater rate of interest "than is herein provided for," the effect was merely to impose an additional penalty for that which was unlawful at the time the contract was made, which penalty could not, of course, be exacted except where, as in this case, the unlawful act was done *after* the passage of the act imposing the additional penalty. There is, therefore, no necessity here, as in the case of *Bowden & Earle* v. *Winsmith*, to confine the operation of the second section to cases arising under the first section for the purpose of avoiding any conflict with that provision of the constitution which forbids the passage of any law impairing the obligation of contracts, or for the purpose of preventing the giving of a retroactive effect to the act of 1882 ; for here, as we have seen, the act of 1882, as herein construed, does not impair the obligation of any pre-existing contract, nor is it given any retroactive effect whatever.

But in addition to this, while it is entirely true, as is said in *Potter's Dwarris on Statutes*, page 165, and recognized in *Nichols* v. *Briggs* (18 *S. C.*, 482), that "where an amendment of a statute is made by declaring it shall be amended so as to read in a given way, the amendment has no retroactive force ; the new provision is to be understood as taking effect at the time the amended act would otherwise become the law," yet it by no means follows that the original provisions of the statute, unaffected by the amendment inserted, are to be regarded as taking effect only at the date of such amendment. On the contrary, the strong implication from the language used by that distinguished author is just the other way. For when it is said, "*the amendment* has

no retroactive force; *the new provision* is to be understood as taking effect at the time the amended act would *otherwise* become the law," it is necessarily implied that the original provisions of the act, not affected by the amendment, are to be regarded, so far as the time of their taking effect is concerned, as if no amendment had been inserted.

Now, in this case, under the law as it existed at the date of the contract, it was unlawful to charge or receive any greater rate of interest than seven per cent., and the only change made by the first section of the act of 1882—the only "new provision" inserted—was the privilege to charge and receive as much as ten per cent. This "new provision," under the authority above cited, could not take effect until the passage of the amendatory act, but in all other respects the law *remained* as it was at the date of the contract. It was not then for the first time enacted, nor was it then re-enacted, but it was then simply republished as the law which had been in force since its original enactment. Indeed, so far as this case is concerned, the first section of the act of 1882 may be practically regarded as precisely the same as it was at the time of the making of the contract, for the new provision inserted in the old law by the amendment could not take effect until the passage of the amendatory act, which being subsequent to the date of the contract, could not apply to or in any way affect it.

Again, it is asked: "Suppose the defendant here had brought suit on the note, would the plaintiff here [have] been allowed to file a counter claim under the second section of the act of 1882, and get credit on his note to extent of double the amount of usury charged in the note?" We agree with the counsel when this question is answered in the negative, for the very simple reason that the statute does not impose the penalty sued for in this case for *charging* usury, but only for receiving usurious interest. Hence, until such interest has been received, no such penalty has been incurred, and therefore, in the case supposed, the borrower could neither collect by a separate action, nor be allowed as a counter-claim to an action to recover the sum actually loaned the amount of said penalty, because none had been incurred. But if the borrower had paid usurious interest on the note, and

after such payment the lender had brought his action to recover the amount of the note, it is clear that the borrower might set up as a counter-claim to such action double the sum of the usurious interest so paid, because the statute so expressly provides.

It seems to be supposed that the allowance of such a counter-claim operates in some way to impair the obligation of the contract, which all concede to be good to the extent of nine hundred dollars, inasmuch as it reduces, as it is claimed, the amount or value of such contract to the extent of the penalty allowed. This view is based upon an entire misconception of the true nature and real operation of the counter-claim as allowed by the act of 1882. It is not in the nature of a defence to the plaintiff's claim, in which the validity or amount of such claim is assailed, on account of some defect therein, or some objection' thereto, and it does not operate as a *reduction of*, but as a *deduction from*, the amount claimed by the plaintiff. On the contrary, it assumes the full validity of the plaintiff's claim, and only serves to set up a distinct and independent claim, the amount of which should be deducted from the claim of the plaintiff. It is like a case in which a plaintiff brings an action on a note given for money borrowed, and the defendant sets up as a counter-claim a note subsequently given to him by the plaintiff for a horse. There the defendant by his counter-claim makes no assault on the claim of the plaintiff, and does not seek to invalidate it in any way, but may, on the contrary, fully admit its validity, and yet, if his counter-claim is established, he may claim that the amount of it shall be deducted from the plaintiff's claim, and that the plaintiff is only entitled to judgment for the balance. So in this case, if the plaintiff, instead of paying the entire note, principal as well as interest, had only paid the usurious interest, and the defendant had brought his action to recover the sum actually loaned— nine hundred dollars, we see no reason why the plaintiff here could not have set up as a counter-claim, a demand for double the sum of usurious interest paid by him, and claim that judgment should be rendered for the difference only; for such a defence would not assail or in any way impugn the original contract, admitted to be good and valid for the repayment of the nine hundred dollars, but would be simply a claim that the amount of a

liability which Trimmier had subsequently incurred to Hardin, should be deducted from Trimmier's confessedly valid claim for nine hundred dollars, and judgment rendered for the balance only.

It seems to us, therefore, that in any view which may be taken of this case, the plaintiff was entitled to recover under the provisions of the statute, and hence the other question presented, as to whether the plaintiff could not at common law recover back the money actually paid, does not properly arise and need not be considered.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.