EARLE v. OWINGS.

1. EVIDENCE—WRITINGS.—PAROL evidence is admissible to show the object or purpose with which parties execute an instrument and that which does not really contradict or vary a written instrument is admissible for purpose of showing a contemporaneous, collateral, and independent agreement.

2. FINDING that the evidence supports an agreement to convey land to one in trust to be by him conveyed to others and upon payment by each for his share the mortgage given to secure the whole purchase money should be satisfied as to that part, sustained.

3. USURY—INTEREST.—A NOTE due some years after date, "with interest thereon at the rate of ten per cent. annually from this date," draws interest at ten per cent. until due, and at seven per cent. after due, and the collection of ten per cent. after maturity under honest belief of right is nevertheless usury.

4. IBID.—A TRUSTEE becoming a borrower or debtor on behalf of himself and his *cestui qui trustent* may plead the counter-claim allowed by the usury statute for benefit of himself and his *cestui qui trustent*.

5. LIMITATION OF ACTIONS—USURY.—THE COUNTER-CLAIM for usury is not barred in three years, but runs with the contract.

6. USURY.—The penalty provided by the act of 1882 attaches to collection of usurious interest after 1898 on a contract executed before that date.

7. IBID.—COSTS.—The usury statute relieves the defendant of all costs on circuit, and it is proper for a court of equity to require the plaintiff to pay all costs on circuit which would usually be taxed in his favor.

Before TOWNSEND, J., Greenville, August, 1904. Modified.

Action by J. E. Earle against Samuel Owings, Yancy Carter, Ella Easley, Lucy Harris, and Butler Harris. From Circuit decree, plaintiff appeals.

*Messrs. Heyward, Dean & Earle,* for appellant. *Mr. Heyward* cites: *Is appellant chargeable with usury?* 2 N. & McC., 393; 2 Hill., 408; 9 Rich., 80; 10 Rich. Eq., 594; 16 S. C., 75; 14 S. C., 343; 68 S. C., 115. *The act of 1898 does not apply to contract made before that date:* 62 S. C.,

171, 191.   *Can Samuel Owings set up plea of usury?* 66 S. C.; 60; 53 S. C., 115; 67 S. C., 108.   *Is the plea of usury barred?* Code of Proc., 94, 110, 113; 66 S. C., 60.

*Mr. Adam C. Welborn,* for Owings, contra, cites: *Plaintiff collected usurious interest after maturity of notes:* 51 S. C., 550; 68 S. C., 114; 57 S. C., 345; 43 S. C., 86.   *The statute of limitations cannot apply to the counter-claim against usury:* 49 S. C., 358; 58 S. C., 240.   *What is the penalty?* 30 S. C., 391; 66 S. C., 60; 27 S. C., 117.

October 7, 1905.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   On December 3d, 1885, plaintiff executed a deed conveying fifty acres of land in Greenville County, S. C., to the defendant, Samuel Owings.   On the same day, defendant, Owings, executed to plaintiff a mortgage to secure the balance of purchase money for said land, represented by ten promissory notes given by Owings to plaintiff.   This action was to foreclose said mortgage for the balance claimed to be due upon the last five of said notes. The defendants answered separately, each alleging that on December the 3d, 1885, plaintiff divided fifty acres of his land into five lots, and sold said lots to Samuel Owings, Jacob Harris, Wilson Early and James Harris, and by agreement of all the parties the deed to the whole fifty acres was made to Samuel Owings, for the benefit of himself and all the other purchasers, and Owings mortgaged the same to the plaintiff to secure the balance of the purchase money, for the benefit of himself and the other purchasers, and alleging, further, that it was agreed by all the parties that, as each defendant purchaser paid plaintiff for his or her lot, Owings was to execute a deed for the same to the purchaser, and the mortgage should be released thereon by the plaintiff.

The Circuit Court considered parol testimony, taken by the master subject to objection, which was offered to show

this defense of defendants, and the first question presented is whether such evidence is admissible, as violating the rule excluding parol testimony tending to contradict or vary a written instrument. We think the testimony admissible. The testimony showing why the deed was executed to Owings instead of to each defendant separately, and why the mortgage was executed by defendant Owings on the whole land falls within the rule which permits parol testimony to show the object or purposes with which the parties executed the instruments. *Moses* v. *Hatfield*, 25 S. C., 324; *Brick* v. *Brick*, 98 U. S., 514; 1 Elliott on Evidence, sec. 584. The testimony that plaintiff agreed to release the mortgage on each separate lot as the purchase money therefor was paid by said purchasers falls within the rule that when the written evidence of the contract does not contain all the terms of the transaction between the parties, parol evidence, which does not really contradict or vary the writing, is admissible for the purpose of showing a contemporaneous, collateral and independent agreement. *Chemical Co.* v. *Moore*, 61 S. C., 166, 39 S. E., 346; *Ashe* v. *R. R. Co.*, 65 S. C., 138, 43 S. E., 393.

The next question is whether the Circuit Court erred in affirming the master in the conclusion that the testimony established the above agreement as contended for by the defendants. After a careful review of the evidence, we cannot say that the conclusion of the Circuit Court is against the preponderance of the same.

The next question involves a proper construction of the notes in question, as to whether they bear ten per cent. interest after maturity. A copy of one of the notes will suffice, and it is as follows:

"$120. By the third day of December, 1895, I promise to pay James E. Earle or bearer one hundred and twenty dollars, with interest thereon at the rate of ten (10) per cent. annually from this date. This third day of December, 1885.

"Test: H. P. Johnson.          his
                            Samuel X Owings."
                               mark.

There is nothing in the terms of the note to suggest that interest after maturity is to be ten per cent.; on the contrary, the plain contract is to pay interest annually at that rate up to maturity. The term "annually" may have full effect between the making and maturity of the note; after maturity the law fixes the interest at seven per cent. *Ehrhardt* v. *Varn,* 51 S. C., 550, 29 S. E., 225.

We inquire next whether the plea of usury is available to the defendant Owings. He was allowed by the master to amend his answer so as to plead usury, in behalf of himself and his co-defendants and set up a counter-claim under the usury statute. It is excepted that Owings could not avail himself of such plea. The contract, as shown, was made with Owings for the benefit of himself and others; he was, therefore, a borrower or debtor, in the sense of the statute, notwithstanding his relation as trustee for others. The exception, therefore, cannot be sustained.

Is the counter-claim for usury barred by the statute of limitations—three years—as for a penalty or forfeiture? The Circuit Court held that the statute of limitations has no application, and this ruling is supported by the cases of *Mortgage Co.* v. *Gilliam,* 49 S. C., 359, 26 S. E., 990; *Allen* v. *Petty,* 58 S. C., 240, 36 S. E., 586. Section 113, Code of Civil Procedure, provides a three years' limitation for "an action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved or to such party and the State, except where the statute imposing it prescribes a different limitation." The statute imposing the penalty does not expressly provide a different limitation, but the plain implication is that the counter-claim is available, and is effective, as long as the right of action exists on the principal sum. It is not without force or plausibility to suggest that the counter-claim is but a cross-action, and if a direct action for the penalty could be barred in three years, the defense of counter-claim could also be barred in that time. But the design of the statute was to prevent usury by giving the debtor these two distinct reme-

dies and to hold otherwise, than was held in the cases cited above, would put it in the power of a creditor, who has violated the usury law, to deprive a debtor of the remedy intended to prevent usury, by merely postponing his action for the principal sum.

The next question which arises is whether the plaintiff actually received usurious interest, and, if so, how much. The case of *Ehrhardt* v. *Varn*, 51 S. C., 550, 29 S. E., 225, shows that though the contract on its face is not usurious, yet that subsequently charging and receiving interest thereon, at a greater rate than allowed by law, is usury. Inasmuch as the notes in question bear only seven per cent. after maturity and the plaintiff himself testified that he charged and collected interest at ten per cent. up to February 1st 1901, it is clear that the Circuit Court was right in holding that usury had been collected. This was not a mere mistake in calculation and consequent collection of excessive interest against the intent of the parties, such as in *Rushton* v. *Woodham,* 68 S. C., exonerated from the charge of usury. The most favorable view that might be taken of plaintiff's conduct is that he honestly believed he had a right to collect ten per cent. interest after maturity under the terms of the note, but such belief or mistake of law cannot exempt him from the penalty of usury. *Mitchell* v. *Bailey,* 57 S. C., 345, 35 S. E., 581

With respect to the amount of usury and the consequent penalty as a counter-claim, we think the Circuit Court was in error. The rule adopted by the master which was affirmed by the Circuit Court was that the counter-claim should be "made up of double the amount of unlawful and usurious interest charged and received by the plaintiff under the act of 1882, 18 Stat., 35, and double the total amount received in respect of interest since the act of 1898, 22 Stat., 749." Under this rule the Circuit Court held that $210.75 unlawful interest had been received, and allowed a counter-claim for double that sum, or $421.50, thereby applying the penalty of the act of 1882 up to the

time the act of 1898 went into operation, and then applying the penalty of the act of 1898, because of the receipt of unlawful interest after that date. We think the act of 1898 has no application to this case because it is expressly provided in that act that it shall "not apply to contracts made before it goes into effect." Because of this provision the rule stated in *Hardin* v. *Trimmier*, 27 S. C., 110, 3 S. E., 46, cannot apply. It cannot be said that payments of interest after March 2d, 1898, were upon contracts then made separate and distinct from the contracts sued on, as there is no evidence whatever to that effect; on the contrary, the testimony is that the interest was charged and received upon the notes in suit. It must follow that the penalty provided in the act of 1882 applies in this case. Under our view the amount of excessive interest received was $105.54 and, therefore, a counter-claim should have been allowed for only double that sum, or $211.08. Deducting this sum from the principal sum claimed, $515, leaves $303.92, for which plaintiff is entitled to judgment without costs in the Circuit Court.

It appears that of the fifty acre tract, lot No. 1 was sold to Wilson Easley, to whose rights defendant, Ella Easley, has succeeded, and that Ella Easley has paid the amount agreed to be paid therefor; that lot No. 2 was sold to Jacob Harris, and that Yancy Carter has acquired his rights, but has not fully paid the amount due thereon; that lots Nos. 3 and 4 were sold to Samuel Owings and have been paid for; that lot No. 5 was sold to James Harris, and defendant, Lucy Harris, has acquired his right therein, but has not fully paid for the same. The Circuit Court, in accordance with the recommendation of the master, held that only lot No. 2, claimed by Yancy Carter, and lot No. 5, claimed by Lucy Harris, should be sold for the payment of the balance due. And this is approved as equitable, inasmuch as defendant, Ella Easley, has paid for her lot and received a deed therefor from Samuel Owings, and Samuel Owings has paid for his lot, which, under the agreement, entitled them to have the mortgage released as to their said lots. With respect

to the proportions due on lots of Yancy Carter and Lucy Harris, we are bound to be governed by the proportions fixed by the master, to which no objection was made in the Circuit Court and which the Circuit Court adopted as correct. The Circuit Court allowing a counter-claim of $421.50 found the balance due to be $93.50 and that the lot of Yancy Carter should be liable for $80.57 thereof, and the lot of Lucy Harris, for $12.93. Under this proportion the lot of Yancy Carter should be liable for $261.89, and the lot of Lucy Harris for $42.03, of the amount held to be due by this Court.

With respect to the matter of costs in the Circuit Court, the master recommended that plaintiff "pay all the costs of this action," and this was approved by the Circuit Court, to which exception has been taken. Under the usury statute plaintiff can only recover for the balance due of the principal sum, without interest or costs; no costs can, therefore, be taxed in favor of plaintiff. But the costs should be paid by some one, and, as the defendant cannot under the statute be liable therefor, it is competent for a court of equity to make the plaintiff liable as the mover of litigation. The order as to the costs, as we construe it, does not justify any taxation of costs in favor of defendants, or their counsel, against the plaintiff, but makes the plaintiff liable for all the costs which but for the usury statute, would ordinarily have been taxed, under the decree, in his favor.

The judgment of the Circuit Court is, therefore, modified so as to conform to the views above announced.

THE CHIEF JUSTICE *did not participate in this opinion because of illness.*