## 7487

### LEE v. UNKEFER.

1. RULE 27 OF THIS COURT does not apply to a case begun before its adoption.

2. AMENDING PLEADINGS.—The Circuit Court has power to allow a complaint amended after this Court has remanded it for new trial.

3. EVIDENCE.—The partnership agreement between other parties and defendant here objected to by defendant was competent as tending to aid the Court in ascertaining the meaning and effect of the papers passed between plaintiff and defendant out of which came the liability sued on, and it was further competent as tending to support the testimony of defendant that he had agreed to pay and did pay the amount of this mortgage debt to plaintiff.

4. IBID.—THE WRITING between the parties here involved, including assignments of notes and mortgages, expressing no consideration and setting out no contracts, but only results of acts, parol evidence was admissible to show the consideration therefor and the contract between the parties and not within the rule of tending to impair or add to written instruments.

5. STATUTES OF FRAUDS—CONSIDERATION.—Stay of foreclosure proceedings, assignment of mortgages and of quarry products, is such consideration for paying the debt of another that the proof of it by parol is not within the statute of frauds.

6. NEW TRIAL.—Reducing verdict by new trial *nisi* was only correcting here error in verdict.

7. COLLATERAL.—Charge here complained of only meant to instruct jury that if a debtor secure his debt with collateral and the collateral is sold for less than the debt, he is liable for the balance.

8. NEW TRIAL.—No error here in refusing new trial asked for on ground of newly discovered evidence, consisting of bank books, which were all the while accessible to movant, no reason being assigned for not examining them before the trial.

9. REHEARING refused.

Before HYDRICK, J., Spartanburg. Affirmed.

Action by J. M. Lee against J. G. Unkefer *et al.* From judgment for plaintiff, defendant appeals.

*Messrs. Simpson & Bomar,* for appellant.

*Messrs. Sanders* and *DePass,* contra.

The opinion in this case was filed October 29, 1909, but remittitur held up on petition for rehearing until

March 14, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. On first appeal in this case it was held the Circuit Court should have granted a nonsuit on the ground of a fatal variance between the allegations of the complaint and the proof offered; and the judgment for $4,410.72 was set aside, and the cause remanded for a new trial. On the second trial the verdict was for $5,500, but the Circuit Court ordered a new trial unless the plaintiff should remit all in excess of $4,456.78. The plaintiff complied with the order and entered judgment for the sum of $4,456.78.

While the exceptions in this appeal are very numerous and elaborate, all of them may be discussed under three or four heads.

The defendant's first position is that the Circuit Court should have ordered a nonsuit on the ground that rule 27 of this Court provides: "Whenever an appeal to this Court is sustained on the ground that a nonsuit should have been granted or a verdict directed because of a total failure of evidence, or because the evidence could admit of but one inference, the reversal of the judgment shall have the same effect as if the nonsuit had been ordered, or a verdict returned under the direction of the Circuit Judge." The action was commenced before the rule was adopted, and therefore does not fall under it. *Wilson* v. *Va.-Ca. Chem. Co.,* 78 S. C., 381, 58 S. E., 1019; *German-Am. Ins. Co.* v. *So. Ry. Co.,* 82 S C., 1, 62 S. E., 1115.

Contrary to the defendant's second position, it was decided in *Taylor* v. *A. C. L. R. R. Co.,* 81 S. C., 574, 62

S. E., 1113, and *German-Am. Ins. Co.,* v. *So. Ry. Co., supra,* that the Circuit Court had the power to allow a complaint to be amended after the cause had been remanded by the Supreme Court for a new trial.

The main questions are: First. Was the testimony as to a parol agreement incompetent as tending to impair or add to a written agreement? Second. Was the alleged agreement on which the plaintiff recovered judgment obnoxious to the statute of frauds, as a parol agreement to pay the debt of another?

To determine these issues made by the appeal, it is necessary to ascertain the relations of the parties as fixed by the written instruments which passed between them. The plaintiff held a note of one James C. Johnston, secured by a mortgage of a tract of land of 255 acres, afterwards conveyed by Johnston to the Keystone Granite Company for $7,500, dated December 19, 1895, and a mortgage on the same land for $3,964, dated November 18, 1896. On June 10, 1898, Johnston as principal and plaintiff Lee as surety, made a note to the Central National Bank for $6,129.23, and to secure this note Lee, the surety, assigned to the bank both the mortgages above mentioned. The mortgage of $3,964, however, must have been somehow embraced in the debt of $6,129.23, for Lee admits in his evidence that the note and mortgage of $7,500 and the note for $6,129.23 on which he was surety, covered Johnston's entire liability in which he was interested. The land covered by these mortgages had on it a granite quarry. With the design of working this quarry, James C. Johnston, Edward J. McIlwain, the defendant, John G. Unkefer and Samuel B. Goucher, entered into copartnership on July 1, 1899, under the name of McIlwain, Unkefer Company. By the partnership agreement, which was in writing, Johnston turned into the firm the land covered by the mortgages to the plaintiff Lee, and the copartnership assumed "a certain mortgage of eight thousand dollars now on the prop-

erty of the Keystone Granite Quarries." There can be no doubt that the mortgage here referred to was the mortgage of $7,500 from Johnston to Lee. The defendant objected to the introduction of this agreement as *res inter alios acta.* We think it was clearly competent, as tending to aid the Court in ascertaining the meaning and effect of the papers which passed between the plaintiff and defendant. But, aside from this, the defendant cannot complain of its introduction, for the reason that it tended to support his testimony that he agreed to pay and did pay the amount of this mortgage debt to the plaintiff.

On July 1, 1899, the day the partnership agreement was made, Johnston assigned in writing all his interest in the partnership to Edward J. McIlwain, one of the copartners. This assignment, though absolute in form, was made, as defendant admits in his evidence, to secure an indebtedness of Johnston to the partnership; but it does not appear what this indebtedness was. It will simplify this complex matter to say at this point that all the transactions with the plaintiff Lee, though made by Goucher or Unkefer or McIlwain in their individual names, were made on behalf of the partnership, and that the business was also known as the Keystone Granite Company, and that stock was issued to the several partners, as if there had been a regular incorporation, though there is no evidence in the record of incorporation. Lee commenced suit to foreclose his mortgages, and it was important to McIlwain, Unkefer Company to stop the suits. In this situation Goucher for a price made a written contract with Lee, dated January 8, 1900, which provided: "That the said S. B. Goucher agrees to pay the interest on eight thousand dollars from January 8th, 1900, to April 1st, 1900, and the balance of interest due to that date on a note given by J. C. Johnston to J. M. Lee for $6,129.23 to the Central National Bank. In consideration of the above payment, J. M. Lee agrees to take no further action in said suit before April 1,

1900, at which time the said McIlwain, Unkefer Company shall have the option of paying off the said note to the Central National Bank of $6,129.23, and securing to J. M. Lee the note of $8,000, or of having the same assigned to any one paying off the said note of $8,000; or in default thereof the said J. M. Lee shall have the right to proceed with his suit as he may be entitled to do according to law. On settlement of this matter as above set forth, Lee agrees to release all claims to the rubble." The "$8,000 note" referred to was the note of $7,500 secured by the mortgage. We have stated the relations of the parties, according to the undisputed evidence on the 30th day of March, 1900, two days before the maturity of the option above set out when the instruments of writing, alleged by the defendant to constitute the entire contract between Lee and McIlwain, Unkefer Company, were made. These instruments were the following assignments by Lee: Assignment to Keystone Granite Company of Lee's "right or claim to any or all the rubble from the quarries of said company." Assignment to Samuel B. Goucher of the note and mortgage of Johnston for $7,500, written on the back of the note in the usual form. Assignment of mortgage of Johnston to Lee for $3,964, written on the back of the mortgage in these words: "For value received, I hereby assign to Samuel B. Goucher or order, the within mortgage without recourse on me. It is not intended, nor is it understood, that this assignment shall carry with it any part of the balance due me by James C. Johnston on the note this day assigned me by the Central National Bank of Spartanburg, but it is only intended to secure as far as it can any moneys advanced by the said Samuel B. Goucher for said James C. Johnston. March 30, 1900."

These assignments do not express the consideration for which they were given, and herein lies the point in controversy. There is no written instrument which shows, except by the light thrown on it by parol evidence, any spe-

cific sum paid or obligation assumed as a consideration of
the assignments.   It is true, on the day they were made, the
amount of the note of Johnston and Lee to the Central
National Bank for $6,129.23 was paid, and that the note
was assigned by the bank to Lee, and that Lee gave receipt
acknowledging payment by "Samuel B. Goucher for James
C. Johnston" of $2,000 on the note.   But there is nothing
in the writings to show that the partnership or any mem-
ber of it paid the $6,129.23 either to Lee or to the bank
for him, or even that the $2,000 paid was not the money of
Johnston.   Incorporated in the receipt for $2,000 is this
agreement by Lee: "And in consideration of ten thousand
dollars of stock of the Keystone Granite Company being
assigned to me to secure balance on said note, I agree to
extend the time for the payment of $1,000.00 thereof to
November 1, 1901, and of the balance to April 1, 1902,
interest payable semi-annually."   The same agreement was
indorsed on the note for $6,129.25 and signed by Lee.
Accompanying it was this paper, given by Unkefer: "In
consideration of settlement made this day *in re* J. M.
Lee against J. C. Johnston *et al.,* I agree to assign and
deliver to said Lee ten thousand dollars of the stock of
Keystone Granite Company, to be held by him as collateral
to secure the balance due on note of J. C. Johnston and
J. M. Lee (as security) to the Central National Bank, of
Spartanburg, and assigned by said bank to J. M. Lee."
Not only do all these papers, which we have set out, fail
to show the consideration paid by McIlwain, Unkefer
Company, but they fail to set out the contract.   On the
contrary, they show only the results of a contract—what
was actually done by the parties.   To illustrate, the parol
testimony shows that the money received by the bank for
the $6,129.23 note was actually paid by McIlwain, Unkefer
Company, but there is no writing imposing upon them
the obligation to pay it, or showing that they actually
paid it.   So, if they had refused to pay that sum, and

it should be held that the contract could not be proved by parol, the plaintiff could not have enforced payment, and the defendant's firm would be able to hold the assignments executed to them without paying anything for them. That it was competent to prove any promise or other consideration for the assignments is held in *Wilcox* v. *Priester,* 68 S. C., 106, 46 S. E., 553, *Earle* v. *Owings,* 72 S. C., 362, 51 S. E., 980, and other cases. The Circuit Court was obliged to receive the parol evidence of a contract on the part of McIlwain, Unkefer Company to pay Lee the amount due on the $7,500 mortgage and also the amount due on note for $6,123.29.

The objection that the evidence admitted of no other inference than that the contract imputed to McIlwain, Unkefer Company to pay Johnston's note for $6,129.23 fell within the statute of frauds as a parol contract to pay the debt of another is not well founded. Lee assigned two mortgages, on one of which there was due about $10,000, and on the other mortgage about $3,700. Both these mortgages were liens on the lands of McIlwain, Unkefer Company, and were held by the bank as collateral to Johnston's note for $6,129.23. Johnston was still interested in the business of McIlwain, Unkefer Company, and it was to the interest of the firm that the foreclosure proceedings should be stopped, and that it should control the mortgage liens on the partnership lands. Under these conditions the stay of the foreclosure proceedings, the assignment of the mortgages, and the assignment of Lee's interest in the rubble made a consideration to McIlwain, Unkefer Company sufficient to support a promise from that firm to pay Johnston's debts. *Ellis* v. *Carroll,* 68 S. C., 376, 47 S. E., 679. Whether the firm made such a promise was properly submitted to the jury as a question of fact. The verdict of the jury was a finding that such a contract was made.

The reduction of the verdict by the order granting a new trial *nisi* was nothing more than correcting a mistake as to

14—85

the amount of the verdict, so as to prevent the plaintiff from recovering from the defendant more than the aggregate balance due to him on the debts of Johnston, which Lee alleged the firm of McIlwain, Unkefer Company had promised to pay.

The exception that the Circuit Judge had failed to construe the written papers was taken under a misapprehension, for the instruction was expressly given: "There is nothing in any of those writings or in all of them together making a contract on the part of the defendant to pay any sum whatever. Therefore I charge you that, if there was no contract outside of those writings, the plaintiff cannot recover."

The charge on the subject of collateral does not admit of the meaning that the mere fact that the firm of McIlwain, Unkefer Company had given collateral for Johnston's debt bound them to pay the debt. All that the instruction meant was that when collateral is given for a debt, and the collateral fails to bring the full amount, the debtor is responsible for the remainder of the debt, and is not discharged from the obligation to pay it. The Court did not intimate to the jury that the partnership ever owed the debt for which the collateral was given.

There was no abuse of discretion in refusing the motion for a new trial on the showing as to alleged after discovered evidence, furnished by the books of the Central National Bank. These books were accessible to the defendant at all times, and no reason was assigned why they had not been examined before the trial and offered in evidence. All the exceptions must be overruled.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

March 14, 1910. PER CURIAM. After careful consideration herein, this Court fails to discover that any material question of law or of fact has either been overlooked or disregarded.

It is, therefore, ordered that the petition be dismissed, and that the order heretofore granted staying the remittitur be revoked.

JUDGE WILSON *sat in this case in place of* MR. JUSTICE HYDRICK, *disqualified.*